THE STATE, JAMES T. BOICE, PROSECUTOR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX.

Under the act entitled "An act to authorize the burial of the bodies of any honorably discharged soldier, sailor or marine who shall die without leaving means sufficient to defray funeral expenses," approved February 13th, 1884 (*Pamph. L.*, p. 17), the boards of chosen freeholders in the respective counties of this state have no legal power or authority to create the independent office, position or employment of "Superintendent of Soldiers' Burials," or any like office, position or employment, and affix an annual or other salary thereto. The power and authority of the board of chosen freeholders under this act are, by the plain provision thereof, limited and restricted to the designation of some county official, already created and in existence, and not having by law the care of paupers and the custody of criminals, to perform the duties provided to be performed under the provisions of this act, and the county official so designated must be one whose accounts are in other respects audited and paid by the board of chosen freeholders.

---

On application for *certiorari*.

Argued at June Term, 1895, before Justices VAN SYCKEL and LIPPINCOTT.

For the prosecutor, *Joseph A. Beecher*.

For the defendant, *Joseph L. Munn*.

The opinion of the court was delivered by

LIPPINCOTT, J.   The application for this writ was made upon affidavits and notice.   The affidavits presented the facts fully, and the matter was fully argued on both sides.

The prosecutor is a resident of the county of Essex, and was, on the 10th day of May, 1893, at a regular meeting of the board of chosen freeholders of that county, elected or appointed to the position, office or employment of "Superintendent of Soldiers' Burials," at a salary of $500 per annum, payable in monthly installments.   This appointment was made by virtue of the provisions of an act of the legislature entitled "An act to authorize the burial of the bodies of any honorably discharged soldier, sailor or marine who shall hereafter die without leaving means sufficient to defray funeral expenses," approved February 13th, 1884.   *Pamph. L., p.* 17.   On May 9th, 1894, the prosecutor was reappointed, at the same salary, for one year, and under this appointment he continued to perform the duties required by the act until May 8th, 1895, at which latter date the board of chosen freeholders, by resolution, appointed one Henry H. Smith to this position or employment, in his place and stead, at a salary of $400 per annum.

The prosecutor, upon this application, seeks a writ of *certiorari* to review the resolution and proceedings appointing Smith to this position for the purpose of having the same declared illegal and invalid and set aside, standing as they do as a bar to the further continuance of his employment.

The prosecutor contends for his right to continue in this position on the ground that the statute of 1884, to which reference has been made, does not fix the term for which he holds ; and that, being an honorably discharged soldier of the United States, holding an office or position, the term of which is not fixed by law, under the provisions of the seventh section of an act entitled "An act to reorganize the boards of chosen freeholders in counties of the first class in this state," approved May 16th, 1894 (*Pamph. L., p.* 358), he is protected from removal or displacement.   This section declares

in one of its provisos that any honorably discharged soldier or sailor of the United States shall continue and remain in their respective offices or positions the same as if the act had not been passed, and shall only be removed for cause. The act is one which, among other things, provides for the termination of certain offices and employments under the boards of chosen freeholders in the counties of the first class in this state, but provides against the removal of honorably discharged soldiers or sailors of the United States.

Without at all discussing the assumptions upon which this contention of the prosecutor proceeds, it seems clear to us that the power of the boards of chosen freeholders in the respective counties is limited and restricted by the act of 1884, for its purposes, to the designation of some county official not designated by law for the care of paupers or the custody of criminals, whose accounts in other respects are audited and paid by the board.

The first section of the act provides that it shall be the duty of the board of freeholders in each of the counties of this state to designate for the purposes of the act, "some proper authority other than that designated by law for the care of paupers and the custody of criminals." By a reasonable construction, this language can only refer to some "proper authority" already in existence. The provision that it shall be "some proper authority" other than that designated by law for the care of paupers and the custody of criminals renders it clear that it was intended that this proper authority was one already created. Besides, the second section, among other things, provides that "the board of freeholders of such county is hereby authorized and directed to audit the accounts and to pay the expense of such burial in the same manner in which the accounts of such officer as shall be charged with the performance of such duty as above provided shall be audited and paid."

It is clear, upon a proper construction of this act, that the boards of chosen freeholders have no power under it to create any office, position or employment whatever. The act simply

confers upon the boards the power to impose upon some competent proper county official or authority already in existence, the accounts of whom are audited and paid by the board, the performance of the duties required by the act, and to audit and pay the expenses incurred under the act in the same manner in which the other accounts of such authority, or of such official, are audited and paid.

With the power of the boards thus defined and restricted, it will be seen, so far as the facts appear in the affidavits before us, neither the prosecutor nor Mr. Smith is entitled to hold the so-called position or exercise the employment to which they have been appointed. The creation of this position or employment was, by law, unauthorized.

The prosecutor, therefore, has no legal standing in his application for the writ of *certiorari*, and it must be denied.